Okay, we'll hear Council and U.S. Airways versus McCutchen. Good morning, Your Honors. May it please the Court, my name is Matthew Wessler, and I am counsel for the appellants James McCutchen and Rosenlewick Perry. With the Court's permission, I'd like to reserve four minutes of rebuttal time. That's granted. Thank you. This case presents a stark choice between two interpretations of ERISA's governing statute, Section 502A3, which limits an ERISA plan to recovering appropriate equitable relief when it pursues a claim against a beneficiary for equitable reimbursement. The question in this case is whether, when fashioning relief under that statute, a court must enforce an ERISA plan's terms as written, or whether the statute requires the relief to be based on governing principles of equity. The Supreme Court has spoken directly to this issue in the key case that foreshadows this one, Sereboff versus Mid-Atlantic. We have a line of cases, the Bill Gray line of cases, which includes Ball, Manhattan, and Bill Gray, and the Ryan case, that undercut your position completely. How do we get around that? Your Honor, those cases are not controlling in this case, because in neither of them did the Court, the panels in those cases, believe or view that these types of claims were governed by the specific statutory provision in this case. You'll find nowhere in those opinions any mention of Section 502A3. But all three uphold the importance of the contract, don't they? That's correct, Your Honor, but the basis for their upholding the terms of the contract was that in the absence of any specific statutory provision to the contrary, ERISA plan terms should be enforced as written. But 502 existed at the time those cases were decided. It did, Your Honor, but nobody viewed these claims as being governed by that specific provision. And it wasn't until Sereboff in 2006 when the Supreme Court explicitly authorized these types of claims and said they're governed by this specific statutory provision, which allows only a plaintiff, whether it's a fiduciary or a beneficiary, to obtain appropriate equitable relief. If we agree with you, do we have to overrule those three cases? Your Honor, I don't believe that they are overruled. I simply believe they are. I'm assuming that we could. I'm not sure. I believe they are not controlling, Your Honor. The approach that the Court took in those cases was one in which they said that a necessary antecedent to overriding any express provision of an ERISA plan was some statutory policy of ERISA that conflicted with the enforcement of the plan terms as written. And they saw nothing in ERISA that conflicted with the enforcement of plan terms. Indeed, they said there is no specific provision in ERISA that actually governs these claims. In Bowman Hatt, the Court saw the jurisdiction arising under the general federal common law of ERISA. They didn't even think that there was any specific provision in ERISA that gave them jurisdiction to hear the plan's claim. And they said in the absence of any specific statutory provision, we should enforce plan terms. And that, I think, approach still is good and is true. I think here, however, we have a new statutory provision, in essence, that nobody thought actually governed these claims back in 1997, but that we now know does, and that the plan in this case is explicitly pursuing relief under. Is that because of the Supreme Court decision? That's correct, Your Honor. Three circuits have weighed in after that Supreme Court decision, and all three have, for the most part, decided against your view. That's correct, Your Honor. And refused to import equitable principles into an ERISA plan. That's correct, Your Honor. And I believe those three cases applied a pre-Sereboff analysis, an anachronistic approach. But aren't they consistent? I'm sorry. They are consistent with the way that this Court handled these claims. No, the way the Supreme Court handled it. I disagree, Your Honor. I don't think that the Supreme Court addressed the issue of, given a right under Section 502A3, what is the actual remedy? To what relief is the plan entitled? And to that question, the Supreme Court in Sereboff, it left it explicitly open. Your client wants to have his cake and eat it too, right? Honestly, Your Honor, I believe that the plan in this case wants to have its cake and eat it too. They want full relief under the plan, which is an explicitly legal form of relief, but they want to pursue it under the only provision that now authorizes it, which allows them to only obtain equitable relief. And what the Court said in Sereboff, and in the pre-existing case before that, Knudson, and before that in Mertens, is that if you pursue relief under Section 502A3, you take it subject to the limitations on its availability in equity. How would you determine, how do you determine what is the appropriate amount the plan recovers in this particular case, assuming you're talking about some proportionality, rule of proportionality, I take it? That's correct, Your Honor. You're bound by what you say was the value of the claim, the total value of the claim? How do you determine what the total value of the claim is? Well, in this case, Your Honor, it's important to note that the record is well-supported about the nature of the claims that Mr. McCutcheon had. He was extremely seriously injured in a car accident in which two people died, a third was rendered incompetent. Luckily, he survived, but his damages in the case, not just medical expenses, but total damages ranged between, at the minimum, $1 million. Well, that's somebody's estimate. That's the problem I have. How do you determine? You're saying it was between $1 million and $1,500,000 or something like that? But that's just somebody's estimate. Your Honor, let me emphasize- That's not a determination of the value of a claim that a jury would come to. Your Honor, there are different avenues available for determining the amount of an underlying claim, but I want to just urge this Court to recognize that in equity, that kind of analysis was done all the time. In equity, when a court is asked to sit in equity, it's asked to evaluate each case on a case-by-case basis, and the parties can stipulate to the nature of the damages in the underlying claim, which happens all the time. A jury could allocate a measure of damages, which also occurs. A judge can do it as well, but all three of those avenues are vehicles for apportioning the nature of the underlying claim. So, what do we do with this case? Your Honor, in this case, I believe that the record here establishes sufficiently the nature of the underlying amount of recovery and that- I thought Judge Vinesky was asking about that. I don't know that there has been evaluation. Well, Your Honor, there is record- You say there's a number out there, but I'm not sure- Did they stipulate to that number? They did not. They did not challenge it, Your Honor, but that's the point, is that they believe that it's irrelevant. And so, they had an opportunity to put in evidence actually contradicting the record evidence put on by the plaintiff to establish- My purpose is, let's say there's some doubt about the number that has been arrived at. What do we do with the case? I mean, I suppose if there's a doubt about that number, then what's appropriate is to bring it to the district court, either for the district court to actually allocate the damage elements in this case or for the parties to reach a stipulation about that. I don't think that that issue, though, is at all very complicated. It occurs in virtually every other type of equitable case that occurs in which what's at issue is how much of the underlying damages is actually allocable to medical expenses. Well, it's a little more complicated than that, though, isn't it? Wouldn't you get into the question of whether there was any- I don't know the facts of this case well enough, but wouldn't there, in other cases, be issues as to the comparative fault of the party seeking recovery? They may have a claim worth $1.5 million, but if they're 40 percent responsible for it, that's- the value of their claim is reduced by 40 percent. Yes, Your Honor, but that is a classic question of what a court or parties need to do in equity. You have to retry that whole matter. Your Honor, the idea that this would involve an explosion of mini-trials that would be unwieldy and would just be unworkable, I think, is overblown. I mean, in virtually every other context, in Allborn, for example, and this court just sort of interpreted Allborn, which involves the exact same question except in the Medicaid context, the court said, it doesn't matter, we're not concerned about that, the question is what is appropriate in equity, and the answer to that is what are the governing equitable principles that provide for the measure of relief based on the specific equitable remedy that the plaintiff is seeking? Well, what's wrong with requiring him to pay here? I mean, he agreed in the ERISA contract to segregation and reimbursement. The medical bills came up to $66,000, if I'm not mistaken. He agreed. He agreed to pay that back. What's wrong with obligating him to pay the medicals back? Your Honor, the problem is that it violates the animating distinction between law and equity. It allows for a judge and for the plan to obtain relief based on a measure of its losses, based on a measure of what it provided for in its contract. You mean he didn't agree to pay back the plans, the medical expenses? He agreed, but the only amount of money in equity that the plan can reach is the amount of property that he recovered for medical damages. You actually want us to do a little bending here, don't you? I don't, Your Honor. If the plan were able to pursue its relief under the one specific provision that allows a plaintiff to seek relief under the terms of the contract, 502A1B, it says a party can enforce the terms of its contract. It explicitly recognizes that a party can seek legal relief. It can come in. It can say, here's my contract. We agreed. I'm entitled to all of my money, but this provision, 502A3, is different. It places significant and considerable limitations on the type of relief, and the plan is not able to come in and assert an entitlement to legal relief, which is he agreed, we get all of it, where what's available is equitable relief that's subject to governing principles of equity. Appropriate equitable relief to enforce the terms of the plan. That's correct, Your Honor. And in Saraboff, what... So if you're enforcing the terms of the plan, what's inappropriate about saying adhere to the terms of the contract, the full amount? It would transform the nature of relief from equitable to legal. The fundamental distinction in all of the treatises... Those are just words. That doesn't really answer the question, that this is what the plan provides. That's true, Your Honor. It is exactly what the plan provides. Okay. But if you're limit... Sorry. Go ahead. But if you're limited to pursuing relief under 502A3, which is not a provision that authorizes any relief you're entitled to under the plan... Is 503 the only basis that a plan has for pursuing segregation and reimbursement? I'm not sure, Your Honor, but in this case, that's the only basis that the plan has asserted its jurisdiction arises under, for sure. And if you're pursuing under that relief, you're only entitled to the... You're almost finished, but I just... What is the equitable relief, precise equitable relief that you're seeking? The precise equitable relief is that portion of the underlying recovery that is allocable to medical damages. And in this case, because Mr. McCutcheon only recovered for 11% of his total damages, it's 11% of the amount of medical payments that the plan made. Thank you, Your Honor. Thank you. We'll hear from Mr. Lipschitz. Good morning. May it please the Court. Noah Lipschitz on behalf of the Appellee, U.S. Airways. I think it's easy in this case to harmonize Bill Gray, Bowman Hatt, and Ryan with Saraboff when you look at the context of the rule that this Court has laid down in ERISA, Self-Funded Subrogation Actions, which is that the plan language, if it's unambiguous, and it's undisputed in this case, it is unambiguous, is to be enforced as written. And with respect to 502A3... I don't know if it's that easy to harmonize it, as you say, because neither of those three cases talked about equitable relief. That's correct, Your Honor. They did not decide those cases in the context of 502A3, but what they all revolved around was a principle that clear and unambiguous plan language will be enforced as written. And when you take that as the underpinning, and that's entirely consistent with what the Supreme Court has said about ERISA, which is based on the reliance on written plan documentation, that makes the parties aware of their rights and obligations. And so when it comes to 502A3, as Judge Van Aske was just pointing out, it's tethered to the enforcement of plan terms. So when you look at Sereboff, the question there was, was the nature of the relief equitable? It was an equitable lien by agreement, okay? And that agreement dictated the nature of the relief. Now, as the Supreme Court has laid down... When you have an equitable lien, and you're going to get paid on an equitable lien, don't you get paid less the expenses of that lien? Not if the plan says otherwise. I mean, ERISA, I think what this Court's precedent held in Ryan was that if the plan is unambiguous about the extent of the plan's reimbursement rights, there's no deduction for collection costs in every... See, the difference... Oh, I'm sorry. I just wanted to add that, and maybe you can comment on it, I perceive this enormous unfairness of U.S. Airways' position, where you're going to get $66,000 back that, in a sense, the injured worker here, McCutcheon, got as a result of hiring lawyers and paying for those lawyers. So he ends up paying back $66,000. He gets nothing for the fees that were paid, and he gets nothing for pain and suffering. All he is doing is just paying back the medicals that the plan paid. There seems to be a tremendous unfairness there. Well, I think from the plan... And maybe that's why we should go back to equity. Pardon? Maybe that's why equity becomes important. Well, I think in this case, the equities don't just flow in one direction. I think that's the point of the cases that have upheld common fund... They've been flowing only in the direction of U.S. Airways. I mean, there's a maxim, he who seeks equity must do equity. Why is it not equitable to pay the fair share of the expenses and fees incurred to obtain that $66,000? Because the $66,000 were extended as essentially an interest-free loan to Mr. McCutcheon. He didn't have to pay out of his own pocket under certain written conditions. This was an insurance contract. He was entitled to those benefits. I'm appalled at the argument you make that it was an interest-free loan to him. Well, I think that he's entitled to those benefits, yes, but the source of the entitlement is the contract under which he accepted the benefits. Well, tell me something. What if... He had an accident with a third party, so that brings him within this plan, but what if he had an accident with, let's say, he fell asleep and ran into a tree? You would pay his medicals, wouldn't you, $66,000 for it? Provided they were covered under the plan's terms, yes. But he wouldn't have to pay you a penny, would he? Because he has no third party to sue. That's correct. Well, so he's... It seems like he's better off when he's at fault than when he's not at fault. I don't think so. I think he's in exactly the same place, and in fact, in this case, he's in a better place. He not only gets the $66,000 in benefits in both of your examples, but in this case, he recovered in excess of that. Yes, he had to pay his attorneys. But he's worse off. He's worse off because not only did he have to pay you $66,000, he has to pay his lawyers the fees to get that $66,000. Well, I don't think he's worse off because the recovery in this case exceeded not only the amount of medical benefits, it exceeded the amount of attorney's fees, so he still has the $66,000 in medical benefits. Let's say the attorney's fees in this case were a third, which is probably conservative, and the recovery was $110,000. So he has to pay his lawyers a third of $110,000, which comes out to about $40,000, and he's got to pay you $66,000. He ends up with $4,000. That'd be correct mathematically, and I think in this case, what the Supreme Court has said is so long as you're seeking recovery out of a specified fund and not in excess of that number personally liable, in other words, so it's not a trigger, just because we paid you the benefits, you owe us $66,000 regardless. Speaking of what the Supreme Court said, let me read this one sentence. This is Justice Roberts in the Supreme Court's case, Saraboff, where he says, ERISA provides for equitable remedies to enforce planned terms. So the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable. That would make 502 an empty promise. So equity does have a strong hand, even though there's a contract. And I think what he was referring to there is he was responding to the notion that because it was analogous to a breach of contract claim, the argument was from the other side that it was legal relief, that it wasn't equitable, and he was analogizing it to an equitable lien by agreement, saying although it appears that it's based on a contract, it sort of is a remedy, it's an equitable lien by agreement, therefore it's appropriate, equitable relief, because the way the Supreme Court has interpreted that term, and I acknowledge and we acknowledge they reserved question on the word appropriate because the argument wasn't raised. But as they've interpreted that phrase in the Verity case and in Merton's, they were looking, number one, to categories of relief typically available in equity, and number two, looking elsewhere in ERISA to see whether there was a remedy provided. And what the court said in Verity is where there's elsewhere a remedy under 502A, then relief, equitable relief under 502A3 wouldn't be appropriate because you can get relief under another section. 502A3 is the plan's only vehicle for enforcing the plan terms, and so relief is appropriate under that section. And when you look at the appellate courts that have considered this issue since Sereboff. If McCutcheon had not filed a claim, whether he's at fault or not, you would have, wouldn't you? We have the right, the plan has the right to pursue subrogation. You paid out $66,000, McCutcheon sits still and does nothing. You're not going to let that $66,000 sit without any effort on your part to recover, are you? The plan may or may not pursue recovery depending on the nature of the case and its belief in the prospects for recovery and the nature of recovery. That's a further hypothetical. Were you to pursue the $66,000, you would have to pay for an attorney, right? Correct. The plan would have paid to pursue that claim. That's exactly what McCutcheon did. He paid an attorney to recover the money that you say you should be entitled to. He did, and again, the common fund principle. Shouldn't minimally he get a credit for the attorney fees? He shouldn't if the plan provides that it shall be reimbursed completely first. Facts in Sereboff were that the plan in that case did pay the attorney's fees, their share of the attorney's fees and costs for their recovery. The plan in Sereboff did have a common fund reduction, that's correct, your honor, and these judgments as to whether to have a common fund reduction, some plans may choose to have a common fund reduction because they believe it may incentivize members to go out and seek third party recovery. Some may not. Some funds may make the judgment that a common fund disclaimer is appropriate and won't affect the incentive to go out and get a third party recovery because that recovery is likely to be of such magnitude. You don't think it's fair and equitable that you pay for the attorney fees? Not when the plan provides otherwise. Not when the $66,000 in benefits has been extended under certain written conditions that the parties need to be able to rely upon and not wonder on a case by case basis are they going to be enforced here or not. It's the same concept with the pro rata reduction theory. What if the attorney's fee in this case was 50% or if after you took out the attorney's fee, the plaintiff would have to pay out of his own pocket part of that $66,000, would that still be the remedy here? You're referring to he'd have to pay this? I'm looking at the facts here, $110,000. Let's say that the fees and costs exceed or come up to about $50,000. So you got $50,000 in fees and costs, $110,000 recovery, you got $60,000 left over, you've got a claim for $66,000. Does the plaintiff have to pay all $66,000 under those facts? The plaintiff does not have to pay anything in excess of the fund that was available for recovery. What he received. In other words. What's the fund? Is it the $110,000 or is it the net amount? I think the fund is the $110,000. And so the arrangement between McCutcheon and his counsel and what the appropriate level of fees is that they charge, again, when the plan is clear and unambiguous, that's between McCutcheon and his lawyers. It doesn't take precedent over clear and unambiguous plan language. That's what this court held in Ryan. That's what this court held in Bowman Hatt. It was the same issue. Even though those cases didn't expressly arise under 502A3, they've been cited by other appellate courts, the Eighth Circuit in Schenck, the Eleventh Circuit in O'Hara, as fully consistent not only with Sereboff, but with ERISA jurisprudence under 502A3. Does the Supreme Court's decision signal in further support to the idea that equity plays a role in interpreting ERISA contracts? I don't think so because Cigna involved a different issue. The issue in Cigna was not the enforcement of the plan. It was reformation of a contract. Pardon? It dealt with the district court's reformation of an ERISA contract. It did. And so the issue there was not to enforce the terms of the plan. It was precisely not to enforce them because of another violation of ERISA. There was essentially fraud. There were fraudulent misrepresentations, and so the issue was, are you going to enforce the terms of the plan when there are fraudulent misrepresentations? I think if anything, it shows how narrow the situation is in which you're going to reform the contract. This is not a case of any fraud or misrepresentation. There's no basis which to reform this written contract in this case. In Cigna, there were different facts. It certainly wasn't a plan fiduciary going to enforce the terms of the plan, but whether or not appropriate equitable relief involved deviating from the terms of the plan in a situation where there was already undisputedly an ERISA violation based on a failure to disclose amendments properly. Different issue in Cigna. So I don't think it's pertinent here. It's a different issue, but I thought the Supreme Court's statement that it was appropriate for a district court to use equitable principles to reform a contract, and why could you not therefore use equitable principles here? Because I think it's different in a situation where the fiduciary is seeking to enforce clearly valid terms. You're distinguishing it on the facts, but the principle is the same, isn't it? I don't think so. I think it's a different principle in a situation where there's a different subsection of 502A3 involved. In other words, the subsection involved in Cigna had nothing to do with the enforcement of the terms of the plan. It was just the opposite. When you've got subsection, I think it's mini Roman II, which is tethered to enforcement of the plan terms, I don't think Cigna stands for the proposition that you can deviate from the plan terms that are clear and unambiguous. How is this different than a simple breach of contract action, that law, as opposed to an action on equity? It's different in the following way. An action for breach of contract at law would hold Mr. McCutcheon personally liable, regardless of whether there was a fund, if the plan didn't specify the fund from which recovery was sought, if the benefits weren't in his possession. That was the issue in Knutson, for example, is that the fund was seeking relief against the Knutsons who didn't have the money. It just said, you owe us the money because we paid the benefits. And there, the court held that is an action at law. An action at equity is when there's a specifically identified fund, a portion of the fund that the ERISA plan identifies that it's entitled to, and then it seeks such relief from the party that possesses the fund, whether in this case it's the law firm that has a fund in trust, Mr. McCutcheon, who took a portion of that fund, that's what distinguishes it. Admittedly, these distinctions have been a little arcane, but at least as the law stands now under Sereboff, that's what's required for an ERISA plan to characterize the relief as equitable. I think when it comes to this issue of pro rata reduction, it's a problem because what you have is this idea that on a case-by-case basis, we're going to have satellite litigation when the plan is clear and unambiguous. In this particular case, just as a factual matter, there's simply no evidence that McCutcheon recovered only 11% of his medical expenses. What he had was his counsel in this matter, Mr. Perry, submit a letter saying, I think the claim was worth $1.7 million and he only recovered $110,000. Oh, sorry. I'm sorry to cut you off, but given that he only has $41,000 left, what is it that you're seeking? The $41,000? After disbursement of attorney fees, that's all he got for, presumably, for pain and suffering. Our understanding is that the $41,500 was held in trust by the Rosen firm. After they deducted their attorney's fees, they disbursed the rest. Under Sereboff, commingling or disbursement of funds does not prohibit the relief from being characterized as equitable. What we sought below and what the court awarded was reimbursement or an equitable lien over the entire $66,000. So he has to give you the $41,000 that he has left and he has to come up with another $20 million or so? I think it was $23,000. That's what the district court ordered and we believe that's what's appropriate, given the plan language. So he paid lawyers, he loses the pain and suffering, he has to come up with another $23,000? He has to pay you back the full $66,000? He has to pay back the full $66,000 out of the $110,000 that he recovered. It might have been better for him not to file a civil claim. I think, Your Honor, respectfully, I know my time is up, but as I pointed out, he received the $66,000, he received the settlement in excess of that. I was just thinking it seems to discourage litigants. And the problem here was that that's all the insurance benefits that were available, right? $100,000 came from his underinsured motorist carrier? Correct, and $10,000 came from the lawsuit settlement. Thank you. Thank you. Mr. Wessler? Mr. Wessler, the Supreme Court recognized what might look on the surface as the unfairness of the result, but it said that ERISA, I think that's the first word, was crafted with so much care that we don't think we should play with it. That's something like that, right? That's correct, Your Honor. Why should we play with it? Your Honor, respectfully, I don't think we're playing with it at all here. I think we're doing exactly what the specific provision requires. Oh, the specific provision of the plan requires that he pay it back. He got it, and he pay it back. And that's what the plan says. And the Supreme Court could have done something different, and it recognized very clearly in Sereboff that there were arguments on the other side, but it says, it said that it is disinclined to tamper with an enforcement scheme crafted with such evident care as ERISA. So why, if the Supreme Court wasn't going to do it, why should we do it? Your Honor, the question in Sereboff was not, given a right to relief under 502A3, how much do you get? The only question that the Supreme Court decided in Sereboff was, is this type of equitable reimbursement action authorized? In two previous cases, in Mertens and in Knudsen, in Knudsen, the plan sought essentially the exact same form of relief. They wanted restitution for medical expenses paid to the beneficiary. And the court there said, you can't get it. And the reason you can't get it there is because you're pursuing relief under a specific provision of ERISA that limits your entitlement to relief to only those types of actions that were typically available in equity. And so after Knudsen, there was a question, well, okay, what does that actually mean? And in Sereboff, for the first time, the Supreme Court said, we know that we declined to allow a plan to seek this type of restitution in Knudsen. But here, the specific subrogation provision that you referenced, it's accurate. It actually entitles the plan to relief under this provision. And there's no question that that's what the court said in Sereboff. But they left open this enormous question, which is given a right to relief under this specific statutory provision, how do you measure what you're entitled to? Did the Supreme Court say that subrogation and reimbursement actions under 502 are equitable in nature? They did, Your Honor. They had to. Because in order to allow this type of relief, they had to find that this type of equitable lien or constructive trust was available. That takes it out of the realm of essentially takes it out of contract. It does. Calling it a contract. It doesn't take all contract principles out of the equation. Respectfully, Your Honor, it does. And the court has said over and over again, you must go to look at that way the law was in the days of the divided bench. And if you go back and you look at the treatises, equitable liens and constructive trusts were not based on the language of the contract. A measure of relief, you know, if you read, they're unequivocal, these treatises. They say the measure of relief must be based on the amount that the defendant has been unjustly enriched. Why should we? I'm sorry. Go ahead and finish the sentence. Just not based on the amount that the plaintiff has lost under the contract. Why should we differ from the 6th, the 8th, the 11th and the D.C. circuits? I see my time is about to run out, but I'd like to. No, no. You can answer my question. You're on my time now. You can stay as long as you want. Thank you, Your Honor. Those cases, Your Honor, fundamentally applied an analysis as though this specific statute did not exist. They simply applied a measure of relief based on the language of the contract, and it violates the fundamental principle of what it means to be in equity, which is that you are outside of the contract. The contract does not authorize the relief. Why didn't that work in the other four cases? Your Honor, I can't speak to that. So we should go, like, recently in a case in which the Supreme Court decided that our court was wrong, which I wrote. The Supreme Court specifically said, alone among the courts of appeals, the Third Circuit did X, Y, and Z. And that's what's going to happen here. If we go the way you argue, then we will be alone among the courts of appeals. What gives us why should we do that? Your Honor, respectfully, it's the language of the statute. The statutory language does not allow a measure of relief based merely on the contract. It just doesn't. If you go back and you look at the equitable authorities, they explicitly say that. They preclude relief based on what did the plaintiff lose under the contract. And I think that Schenck and O'Hara and Longaberger, they all failed to adequately grapple with and square their interpretations with the governing specific language of the statute. In other words, they were wrong and will be right if we differ. I agree, Your Honor. Okay. Thank you. Thank you. Do you have any questions? I did have one question. Go ahead. I wanted to ask just this follow-up question related to what Judge Fuentes was questioning your learned adversary about. And that has to deal with is an alternative request in this case that the amount of recovery to U.S. Airways be reduced by the proportionate amount of fees and expenses incurred to obtain that $66,000? I think absolutely, Your Honor. I think that necessarily flows from the principles that govern this type of claim. Thank you. Thank you. We will take this interesting case under advisement. And we thank you for an excellent argument on both sides. It looks so young.